Good morning, and may it please the court. My name is Jeffrey Ellis. I'm here on behalf of Mr. Alderman. This is a case involving the unreasonable determination of facts by a state court. It involves a young child, and like many cases involving young children, that child's testimony is not definite in many respects. What she said was that she felt something between her legs going back and forth. She testified once that it hurt, once that it hurt a little bit, and said that previously she said it hadn't hurt at all. Did she also say that it went in and out? She did say that. There's no question but that there is sufficient evidence to support the rape of a child conviction. The question is whether there is any evidence to support the conclusion that in fact what happened was an attempted rape of a child, and therefore the lesser-included instruction should have been given. She was not able to describe what happened. She said she couldn't see it. She didn't have prior experiences, obviously, that she could draw from to compare. And she did express that she felt something going in and out. Well, the issue is whether or not the lawyer's performance was deficient for not asking for the lesser-included, correct? Right. The question is whether the lawyer's performance was deficient where there was evidence to support the giving of the lesser instruction. Well, the lawyer said that it was his view that there wasn't evidence to support the attempt instruction. But why wouldn't it have been a reasonable strategic choice to, because there were instructions on child molestation, as I recall, correct? There were. Okay, so the lawyer may have thought with this kind of confused testimony from a young child, they're better off to try to argue for an acquittal on the rape charge and hope for child molestation. It's hard for me to see how that's an unreasonable strategic option. That's not unreasonable, but that's not what this attorney said. If the attorney had stated in a declaration or if there had been an evidentiary hearing and it had come out at the evidentiary hearing that the attorney was making this calculation, better for me to ask the jury to convict on child molestation because the penalty is lesser, that would be strategic. That also bears on the prejudice analysis, because the jury was presented with an option. They didn't have to go all the way for rape. And if they thought that the rape had not occurred, they would have gone, it seems to me, for the child molestation option. And so why would they have, you know, I guess I just have difficulty seeing where the prejudice lies as well. Right. Well, first of all, it's important that none of the child molestation counts were offered as lessors of rape of a child. He was charged with four counts. They convicted on three, including the one count of rape of a child, and acquitted on one. The evidence, and I think the parties agree, that the evidence mostly supports the idea that there were three distinct incidents. The child claimed more, but she wasn't able to distinguish between more than three. The supposition that if jurors had doubts about whether there was penetration, that they would have... Would have acquitted. They would have acquitted, but that also assumes that the jurors viewed child molestation as equal to or at least very close in terms of its seriousness to rape of a child. What you have is clear evidence, clear evidence of attempted penetration, which also could have supported the conclusion of penetration. What you don't have is the ability of jurors to say, yeah, that's right, what he did was attempted rape, and that's more serious than molestation. And therefore... And then when he got up to give his closing argument, it seems to me that there's some reason to think that strategically it would have been an error to make that argument. Saying, oh, my client is not guilty, absolutely not guilty. However, if you find there was not penetration, then it seems to me on a practical level that could be a problem. It could be a problem, and I agree, and I agree that an attorney could make a strategic determination to ask for the lesser included instruction and not affirmatively argue in favor of it. If you agree with Judge Mim, what is the prejudice, then, here, of his not asking for the lesser included? The prejudice is that there's a reasonable likelihood that jurors would have returned the attempted rape if they had been given the instruction. You're agreeing with Judge Mim that there is a greater likelihood that they would have done otherwise. No, what I'm agreeing with is that counsel could have requested the lesser included instruction. When jurors are instructed, they're not told, now, defense counsel wanted this instruction, and that's the only reason I'm giving it to you. They don't know why they're being given lesser included instructions. Counsel could have asked for it. If he had asked for it, the evidence supported it, it would have to be given, and then counsel could have decided strategically not to argue affirmatively for that. But the question is not whether counsel's argument would have substantially advanced, or even, and I think it's fair to say, even if counsel hadn't argued affirmatively for the attempted rape theory, is there a reasonable probability that the jury would have returned the verdict if they had been given that option? Let's talk about that for a moment. Sure. As I understand it, based on the record, there are two different things that point to that possible conclusion. One is the testimony of Nurse Hainer. Correct. Correct. And at a certain point in the record, she talks about in her experience, you could have the sense of in and out where it actually was only on the surface. That's really what I'm hanging most of my argument on right there. But it's also true that at about the same time, she made a comment to the effect of, well, I can't really. She said it does happen in, what, a certain number of cases, but then at the end, she qualifies. She seems to back away from that statement by saying that she really can't say. Sure. And again, I think that's a fair assessment, although I want to make it clear that she says the simple act of pushing against the vaginal area would create this sense of penetration. She made it clear that she can't say that's what happened. She wasn't making any determination about what happened to the child. The other thing is, as you mentioned to begin with, the credibility of the victim, right? Correct. And it's certainly clear that the defense attorney put great focus on the credibility of the witness. You know, I wouldn't characterize it so much as credibility as the lack of certainty or the lack of definition by the victim. Most of the questions by the defense attorney essentially go through what she'd said previously and ask, are you sure about that? Haven't you said something different? But it's confronted with inconsistency. Sure, absolutely. Those two items are what you believe would give rise to, if this instruction had been given, there was a probability that the jury would have returned the lesser included verdict. You've got uncertainty by a young child about exactly what happened to her. What's the answer to my question? Oh, the answer is yes. I'm sorry. I was going to repeat your question back and try to make it sound a little bit more like my argument than your question. But I agree. Did you want to save any rebuttal time? I will save the remainder. Thank you. Thank you. Good morning and may it please the court. My name is Paul Weiser. I'm an assistant attorney general representing the appellee in this matter. We believe the district court's decision should be affirmed and that habeas relief should be denied. Although this case comes to the court under 28 U.S. standards, a lesser included, even if it's reviewed under a de novo standard, alderman cannot show ineffective assistance of counsel. Defense counsel didn't request a lesser included offense instruction, a lesser included offense of attempted rape of a child, because there was no evidence that alderman merely attempted a rape of AZ. You don't agree that the testimony of Nurse Hainer provides evidence that it could have been only an attempt, in other words, there was no penetration? I think, Your Honor, what Nurse Hainer described, first of all, she didn't examine AZ until approximately five years after the events and she could not speak with any certainty whether the thickening of the hymen... I'm not asking whether you believe it. All I'm asking is whether it constitutes evidence that it could have been an attempt. It supports an attempt instruction. I think, Your Honor, no, it doesn't. Nurse Hainer described how touching the hymen of a four- or five-year-old girl is going to be extremely painful. And that's what AZ discussed, was the fact that whatever it was that Mr. Alderman was doing to her, it was causing pain. So he was touching, essentially touching, coming into contact with her hymen, which is, by definition, penetration under Washington law. That's the question that I had. I read Nurse Hainer's testimony essentially to say that, you know, pushing against the vaginal opening in the child would cause dilation and that that would be what was painful. But as I understand Washington law, that is sufficient for penetration because it is however slight as the wording of the statute. So even under her testimony, it seems to me that what she's describing is legally speaking penetration. I mean, that's at least how I read her testimony. I did as well, Your Honor, and I believe the state courts read it that way as well, that what Nurse Hainer was describing, and again, she viewed the incidents, if at all, five years after the fact, I think what she was describing was, in fact, penetration under Washington law. Penetration however slight is what we all know. Question for the jury, whether there is penetration. I know, I shouldn't say I know, every rape statute instruction I know uses the term however slight. But however slight means there has to be something. I mean, there has to be a line between penetration and non-penetration. There is a line somewhere, right? Yes, Your Honor. Even, you know, something could be not however slight. So the question is, I mean, does this evidence support only an attempt at not penetration? The answer has to be yes. You may not believe it, and you know, most people may not, but, you know, one jury out of 12 might believe it. I don't believe, Your Honor. As defense counsel said, based upon the evidence at trial, and he did sit through trial, and he did have Mr. Alderman's. That was a mistake on his part, wasn't it? No, it was not, Your Honor. He did not want to offer a jury instruction when there was not affirmative evidence supporting that particular offense. I have a question about Washington law in that regard. Is Washington law such that there has to be affirmative evidence supporting a requested instruction as distinct from simply not believing the testimony of a witness? That's correct, Your Honor. That's the State v. Fowler case, which is cited in our brief, as well as the State v. Fernandez-Medina case. It's not enough that the jury simply disbelieve or that they might simply disbelieve the State's evidence. There has to be some evidence presented that So it all comes down to the nurse's testimony as to whether that is affirmative evidence that would support the testimony, I mean, the instruction. I think that would be as close as the defense could come to finding something affirmative. It would be through their cross-examination or through the entirety of nurse Hainer's testimony. Again, five years removed from the event since she was speaking. Mr. Weisser, let me ask you just a little bit different question than the question I asked earlier. In other words, assume with me that the nurse Hainer's testimony is at least some evidence that there was no penetration, that there was not, but there could not, you know, maybe there wasn't, so that it would support the giving of an attempt to instruction right now. But, in light of the fact that we're reviewing under AEDPA, does that change the result? Yes, Your Honor. I believe that... Because why? Under AEDPA, we have to give deference to the State Court's conclusion regarding counsel's effectiveness... And what was the State Court's conclusion? The State Court concluded, and this was in the first volume of the excerpt of records, in light of the victim's testimony that she felt something moving in and out of her private, and those were in quotes, Alderman fails to demonstrate that his counsel's decision was unreasonable or that he would have been entitled to lesser-included offense instructions had counsel requested them. That was an alternative holding by the court. They first concluded that the claim was procedurally barred because Mr. Alderman had raised some ineffectiveness claims on direct appeal, and here he was re-raising... Well, under AEDPA, I think you're arguing that, and that was a reasonable conclusion to draw from the record and from the law. And from counsel's declaration, Your Honor, yes. That based upon all the evidence that was before the court, and I would remind the court that the evidence that was presented to the court was presented by Mr. Alderman. This was not a declaration that the State put together or had former defense counsel sign. This was one that Mr. Alderman obtained from Mr. Greer, the former defense attorney. And as I said, the AZ testified that she felt the sensation of something going into and out of her private, and that Alderman's body was moving back and forth as this was going on closer and farther away from me, and that it was painful. There was no evidence to the contrary that it wasn't painful or that it was not going in and out of her private. Although she had said on some prior occasion that there was no pain. That's correct. And we don't have any tapes or transcripts of those prior interviews, so we don't know exactly what questions were put to her at that time, or maybe there were no questions put to her about whether it was painful or not. So we don't know the extent of how much inconsistency there might have been. But yes, she did in fact affirm on her direct testimony and on cross-examination that she had not initially described it as having been painful. Defense counsel's performance was not deficient under the Strickland standard. Counsel can't be faulted for failing to ask for a jury instruction the defense was not entitled to, and to do so is comparable to making a frivolous objection or filing a frivolous motion. And I would point out, since there were questions earlier on attempted rape of a child 1, had there been a conviction for that, the sentencing range for that crime would have been 180 to 238.5 months. Under Washington law, the sentencing range for an attempted crime is 75% of the range for the completed crime. So that's what the range would have been. No, the jury does not know that. That's correct, Your Honor. But as Judge Zille found at the district court, if the jury had truly believed that, or had truly had a reasonable doubt about whether penetration occurred, the jury could simply have convicted Alderman of the third count of child molestation and acquitted him of rape of a child. So as Judge Zille found, even under a de novo standard of review, there was no prejudice under the Strickland standard. The court has no further questions for me. We request that the court affirm the district court's decision and deny habeas relief. I'm just curious, how would you characterize the testimony of Nurse Hainer? That it has no meaning at all? That it has some significance, but not enough to push it over the line? Or what? First of all, much of it was instructive, Your Honor. It was to explain to the jury anatomical features that most of them might be unfamiliar with when we're talking about five-year-old children. And I think that that was the purpose of her testimony. At one point she says, so pushing against it, often kids have the impression that because of dilation, something went inside. Correct? Yes. That would be instructive on the possibility that there had not been penetration? It could have been argued that. I don't believe it comes to that level. I don't think it rises to the level of rendering AZ's testimony about penetration equivocal. Thank you. Thank you, Counsel. You have some rebuttal time remaining? Yes. Well, Judge, ma'am, you just hit on what I was going to cite, which is that portion of the testimony. Because while Nurse Hainer talks about touching the hymen being something that would cause pain, during that part of her testimony she's simply discussing rubbing up against the vaginal area and says two things, that it would be painful and that the child would have the sensation of penetration, which is what AZ described in this particular case. Mr. Ellis, assuming it was error not to give a lesser-included instruction because it's supported by the testimony of Nurse Hainer. Now, the question is under the double deference, under Strickland and AEDPA, don't we still have to affirm? No. Well, first of all, we don't have any... Your question assumed deficient performance. The State Court found no deficient performance after examining... I'm not assuming deficient performance, but still, you know, he had a reason for asking for that and the State Court accepted it, didn't it? The State Court... Not asking for that, not asking for the attempt Right. Let me make it clear. The State Court viewed the evidence supporting the verdict, not the lesser-included instruction and found counsel acted reasonably because there was evidence supporting the verdict. The State Court did not reach the prejudice prong, so that would be de novo review. Thank you. Thank you, counsel. The case just argued is submitted and we appreciate helpful arguments from both of you.
judges: Tashima, Graber, Mihm